## Earon *versus* Mackey *et al.*

1. A partner in a firm assigned a portion of his interest to another party, constituting his vendee by the assignment "a partner in the firm to the amount of one eighth of all its profits and losses from the time the firm began business." The assignee was received as a partner, but there was no change in the style of the firm or its books, no balancing of accounts or account of stock taken, nor anything indicative of a purpose to distinguish the business of the one firm from that of the other. Debts contracted by the firm as originally constituted were wholly or partially paid out of the proceeds of property belonging to the new firm. A firm note was given after the admission of the new partner in renewal of a former note, the consideration of which was services rendered the old firm; and this note was again renewed after the new firm had gone out of business by the liquidating partner.

    *Held,* that under these circumstances the terms of the assignment rendered the assignee liable as a partner upon the said note.

2. It is irregular and erroneous for the court to send instructions to a

jury during their deliberations, and in answer to their request for information, the jury being in their room and not in the presence of the court.

3. The Supreme Court will not, however, take notice of any circumstance that occurs during the deliberations of the jury and is alleged to be error, unless the same appears on the record and is regularly brought to the attention of the court by a bill of exceptions.

April 29, 1884. Before GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN JJ. MERCUR, C. J., and CLARK, J., absent.

ERROR to the Court of Common Pleas of *Clinton county* : Of January Term, 1883, No. 319.

Assumpsit, by Adam Earon against L. A. Mackey, S. H. Fredericks, E. A. Mackey and N. W. Fredericks, late doing business in the firm name of Mackey, Fredericks & Co. L. A. and E. A. Mackey pleaded non assumpsit, payment with leave, and the statute of limitations; and N. W. Fredericks filed a special plea denying the partnership. The action was brought on a promissory note dated January 10, 1865, payable one day after date to the order of Adam Earon for seventeen hundred dollars by Mackey, Fredericks & Co.

On the trial, before CUMMIN, P. J., the facts appeared as follows: On and after February 1, 1853, L. A. Mackey, S. H. Fredericks and E. A. Mackey, were engaged in the business of manufacturing lumber, mining coal, etc., at Queens Run, in Clinton county, as L. A. Mackey & Co. On November 1, 1855, L. A. Mackey, with the assent of his co-partners, sold to N. W. Fredericks a part of his interest in the firm by written assignment as follows:

"For value received, I hereby assign and transfer to N. W. Fredericks the one undivided eighth-part of the leases for lumber, coal and clay, as held by L. A. Mackey & Co., at Queens Run; also the one eighth of all the personal property, notes, bonds, and accounts, and all other property of every kind belonging to the firm of L. A. Mackey & Co., at Queen's Run. Creating the said N. W. Fredericks by this transfer, a partner in the firm of L. A. Mackey & Co., to the amount of one eighth of all its profits and losses from November 1, 1855, and all time prior thereto, commencing with leases of said company.

"L. A. MACKEY.

"QUEEN'S RUN, November 1, 1855."

After this sale the assignee was received as a partner, but the firm name remained as before, and no change was made in the books and accounts. On February 1, 1857, the name of the firm was changed to Mackey, Fredericks & Co., and so continued until December 1, 1858, when the partners ceased

to do business, wound up and divided their assets among themselves. The services which were the consideration for the note in suit were rendered by Adam Earon, the plaintiff, to I. A. Mackey & Co., prior to and after the admission of N. W. Fredericks to the firm; and the original obligations given for the indebtedness were in the name of L. A. Mackey & Co.

On January 10, 1857, Mackey, Fredericks & Co., gave a new note to Earon for $1,975 in renewal of the notes then held by him of L. A. Mackey & Co. This note was again renewed after sundry payments made on account, and interest was regularly paid by E. A. Mackey until January 10, 1869, E. A. Mackey having acted as liquidating partner of Mackey, Fredericks & Co., from the time when they went out of business in 1858, until after the time of suit brought. N. W. Fredericks, however, denied in his testimony that it was agreed between the partners that E. A. Mackey should then act as liquidating partner.

The plaintiff requested the court to charge as follows: " That if they believe that Newton W. Fredericks became a member of the firm of L. A. Mackey & Co., under the written assignment of Nov. 1, 1855, and accepted the interest therein transferred, he is bound by all the terms of the assignment, and by accepting the assignment, agreed upon his part to pay any indebtedness then existing against said firm, and if they find that other members of the firm and the plaintiff in the suit consented to the agreement, the defendants became liable for the debt."

Answer. "If you should find that Newton W. Fredericks became a member of the firm of L. A. Mackey & Co., under the written assignment of November, 1855, and accepted the interest therein transferred, we say to you that he is bound by the terms of that assignment; and this paper then having been brought before us, it is the duty of the court to interpret its meaning, counsel having requested us so to do. . . . We are asked to say to you that by reason of Newton W. Fredericks, taking his interest by virtue of this paper, he thereupon agreed on his part to pay any indebtedness then existing against said firm.

"We decline to charge you as requested on this point. We say to you that this paper will not bear any such construction. It does not mean that Newton W. Fredericks thereby agrees that the debts of the old firm shall be paid by the new one, of which he was then made a member; or that he, as a member, will pay the debts. There is nothing of that kind in the paper, as we understand it. If there is nothing in the case that will bind Newton W. Fredericks, except this paper, we say this paper is wholly insufficient so to bind him."

[Earon v. Mackey.]

The court further charged as follows: "This is the turning point in the cause: Did Newton W. Fredericks agree, or at any time assume to pay this note, or assent to the giving of this note? Now, an incoming partner is not liable for the debts of the firm unless he agrees to be, and of this you must have satisfactory proof. The presumption, in the absence of evidence to the contrary, is that he did not agree to pay the old debts of the firm. Unless, then, there is proof in this case which satisfies your minds that he did agree or assume to pay the old debts, or assent to the giving of this note, the presumption that he did not so agree must prevail. The presumption is that he did not agree. That must be removed from your minds by satisfactory proof."

It appeared from the record, as certified by the presiding Judge, that the jury retired at 4 P. M., and on the next morning, being out all night and unable to agree, they asked the court, by a paper signed by their foreman, whether their verdict must be in accordance with the law as laid down by the court?· To which the court answered "Yes."

Verdict and judgment for the defendants. Plaintiff thereupon took this writ, assigning for error the refusal of the court to charge as requested, and the action of the court in sending a verbal message to the jury, as above stated.

*C. S. McCormick*, for the plaintiff in error.—After assigning the one undivided eighth part of all the property of the firm, the assignment reads: "Creating the said N. W. Fredericks by this transfer, a partner in the firm of L. A. Mackey & Co., to the amount of one eighth of all its profits and losses, from November 1, 1855, and all time prior thereto, commencing with leases of said company." If this clause had ended with the words L. A. Mackey & Co., clearly Fredericks would have become a partner from the date of the contract, and he would not have been liable for the past indebtedness of the firm. If the construction of the court is right, the balance of the clause is of no effect.

The communication of the court to the jury was made without the knowledge of plaintiff's counsel, and is contrary to all analogy. No opportunity was given for an exception at the time: Cunningham *v.* Patton, 6 Barr, 359; Cook *v.* Green, 1 Halstead, 109.

*C. G. Furst* (with whom were *John T. Fredericks* and *Charles Corss*), for the defendants in error.—To render an incoming partner liable to the creditors of the old firm, there must be an agreement between him and the creditors founded

on some sufficient consideration : Collyer on Partnership, Vol. 2, § 525.

It is obvious that the law which the jury inquired of, was that which was delivered to them by the court in their charge, and which they *should* follow, and it cannot be error for the court to have told them so.

Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

In plaintiff's first point the court was requested to charge, "That if the jury believe Newton W. Fredericks became a member of the firm, L. A. Mackey & Co., under the written assignment of November 1, 1855, and accepted the interest therein transferred, he is bound by all the terms of the assignment, and, by accepting the assignment, agreed upon his part to pay any indebtedness then existing against said firm ; and, if they find that the other members of the firm and plaintiff in this suit consented to the agreement, the defendants became liable for the debt."

The instrument the court was thus asked to construe in connection with the facts to be found by the jury is as follows: "For value received, I hereby assign and transfer to N. W. Fredericks, the one undivided eighth part of the leases for lumber, coal and clay, as held by L. A. Mackey & Co., at Queen's Run ; also the one eighth of all the property, notes, bonds and accounts, and all other property of every kind belonging to the firm of L. A. Mackey & Co., at Queen's Run. Creating the said N. W. Fredericks, by this transfer, a partner in the firm of L. A. Mackey & Co. to the amount of one eighth of all its profits and losses from November 1, 1855, and all time prior thereto, commencing with the leases of said company."

The testimony was clearly sufficient to warrant the jury in finding the facts embodied in plaintiff's proposition. In view of the circumstances attending the transaction, the manner in which the business of the firm was subsequently transacted, and especially the course of dealing with plaintiff himself, it is difficult to see how the jury could possibly come to any other conclusion than that the defendant, Newton W. Fredericks, became a member of the firm under the assignment referred to, accepted the interest thereby transferred, and that the other members of the firm assented thereto. Without questioning the sufficiency of the evidence to prove these facts, the learned Judge refused to adopt plaintiff's construction of the assignment, and therefore refused to affirm his first proposition. This is the subject of complaint in the first specification of error.

[Earon v. Mackey.]

There could be no doubt as to the correctness of the ruling complained of, if it were not for the concluding sentence of the assignment, which, in express terms, makes the assignee a partner in the firm to the extent of one eighth of all its profits and losses not only from November 1, 1855, but for "all time prior thereto commencing with the leases of said company," acquired in February, 1853. By accepting the interest transferred to him by L. A. Mackey, and, with the assent of the other members, becoming a partner in the firm on the terms and conditions expressed in the assignment, he acquired all the rights he would have had, and assumed all the obligations he would have incurred by having been an active member of the firm from the date of its formation in February, 1853. It appears to us the paper in question admits of no other reasonable construction without ignoring the obvious meaning and effect of the last sentence thereof. By that the assignee is expressly constituted a member of the firm during the entire period of its previous existence. This being so, it necessarily follows that all the incidents of the partnership relation attached to the membership thus created; and these include not only the right to participate in the profits and distribution of assets, but also the correlative duties of sharing losses and contributing to the payment of debts of the firm, etc.

This construction of the paper is strongly fortified by what appears to have been the understanding of the parties themselves, as shown by the circumstances attending the transaction, and the manner in which their business was subsequently conducted. The firm had been doing business nearly two years before N. W. Fredericks acquired an interest therein, and no inventory had been taken within the last preceding six months. There was no change in the style of the firm or in its books; no balancing of accounts, nor anything indicative of a purpose to distinguish the business of the one firm from that of the other. Debts, contracted by the firm originally composed of three persons, were either partially or fully paid out of the proceeds of property belonging to the firm composed of four members, and the accounts were so kept as to indicate a mutual understanding of the parties that the business was to be continued just as if no change had taken place in the membership of the firm.

We think, therefore, that the plaintiff's first and second points should have been affirmed, and hence the first and fourth assignments of error are sustained.

There is nothing in the record on which to base the second specification of error. The depositions taken on the motion for new trial are no part of the record. It does appear, how-

[Penna. Pulp Co. *v.* Stoughton.]

ever, in a note, appended by the learned Judge to his charge, that after being out all ·night the jury in a paper signed by their foreman asked a question, which was answered by the court in the affirmative, but he does not say the answer was conveyed by a tipstave. If it was so communicated to the jury, not then in the presence of the court, the proceeding was irregular and erroneous; but we can take no notice of any fact or circumstance that occurs during the deliberation of the jury unless it is regularly brought to our attention by a bill of exceptions.

The subject of complaint in the third specification is sufficiently noticed in what has already been said.

Judgment reversed and a venire facias de novo awarded.