Citizens' Bank of Wind Gap *v.* Lipschitz,
Appellant.

292

Argued February 4, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Edward J. Fox*, with him *James W. Fox* and *Smith & Paff*, for appellant.—The case was for the jury : Brown v. Scott, 51 Pa. 357; Second Nat. Bank v. Graham, 246 Pa. 256.

The court below seemed to be of the opinion that it was necessary for defendant in this case to show an express agreement at the time that the note of December 8th was lodged with the bank that that note was an

extinguishment of the original debt. This is not essential and is not the law: Parish Mfg. Co. v. Corp., 285 Pa. 131; Brown v. Bank, 288 Pa. 478.

*Herbert F. Laub,* with him *Aaron Goldsmith,* for appellee.

OPINION BY MR. JUSTICE SADLER, March 18, 1929:

The Citizens' Bank of Wind Gap brought an action against Morris Lipschitz on a note for $5,000, executed by him on June 8, 1926. He was the treasurer of the Triangle Silk Manufacturing Company, and the evidence shows that he signed and delivered the obligation to make good an acceptance by the company which he represented and which was without current funds necessary to pay therefor. His signature was secured by the president and chief executive of the bank, and one of its directors, so as to make good the account of the corporation, and he was admittedly an accommodation maker. In so far as his personal liability is concerned this is immaterial for he became responsible for the debt which he assumed: Negotiable Instruments Act, May 16, 1901, P. L. 194, sections 29 and 60; Zeigler v. McFarland, 147 Pa. 607; Fidelity Title & Trust Co. v. Garland, 291 Pa. 297; Schimmel v. Cohen, 275 Pa. 117; First Nat. Bank of Hooversville v. Sagerson, 283 Pa. 406. The fact that the bank had full knowledge that the note represented the obligation of another is immaterial and would consitute no defense had such been asserted: Delaware Co., etc., Co. v. Haser, 199 Pa. 17.

The note was payable three months after date, and when it became due on September 8th, one in renewal was signed and delivered by the same maker. The original was not, however, surrendered to him, but remained in the possession of the plaintiff, and upon it the present suit is based. When the second obligation became payable on December 8th, the Triangle Silk Mfg. Co. executed its own note, signed by defendant as treasurer,

and caused the same to be delivered to the Citizens' Bank. It was accepted by the bookkeeper, the cashier being temporarily absent, and the note of September 8th, the renewal of that of June 8th, was surrendered, and returned to Lipschitz. Later, on the same day, Greenzweig, the president and chief executive of plaintiff, learned of the transaction, but at the time made no objection. The law is well settled that the acceptance of a new obligation in place of the old is not a satisfaction of the earlier one, though made by the same person (McCartney v. Kipp, 171 Pa. 644; Newhall v. Arnett, 279 Pa. 317), and the same is true where the second note is signed by another: Lauer v. Yetzer, 3 Pa. Superior Ct. 461.

There is a legal presumption that the substituted paper is not taken in discharge, but is received as collateral security for the payment originally undertaken: Second Nat. Bank v. Graham, 246 Pa. 256; Mechanics Nat. Bank v. Kielkopf, 22 Pa. Superior Ct. 128. The contrary is true where it has been stipulated that the earlier note shall be thus liquidated (Brown v. Scott, 51 Pa. 357; Kilpatrick v. B. & L. Assn., 119 Pa. 30; Powel v. Kahler, 86 Pa. Superior Ct. 419), but the burden of showing such intention is upon the one who claims to be released: Jones v. Commonwealth Casualty Co., 255 Pa. 566; Second Nat. Bank v. Graham, supra; Briggs & Drum v. Holmes & Sons, 118 Pa. 283, s. c. 131 Pa. 333. Whether there has been a novation is ordinarily a question of fact (Briggs & Drum v. Holmes & Sons, supra), and though the burden of proof is upon the one so claiming, and he must prove a special agreement for substitution, yet this may be established by evidence of an express understanding to this effect, or by circumstances showing such assent: Parish Mfg. Co. v. Martin-Parry Corp., 285 Pa. 131.

When the bank retains the original note, the court is plainly justified in finding that the second one given was merely as collateral (Cooper v. Cooper, 60 Pa. Su-

perior Ct. 390), but the fact that the old obligation has been surrendered is to be considered in determining whether the first debt has been cancelled. It will be noted in this case that when the renewal note of September 8th was given, the original of June 8th was retained by the bank, and, clearly, the former could not then be treated as a substitute for the latter. When, however, the second became due on December 8th, a different course was pursued by the bank, and the new note of the Triangle Silk Mfg. Co. was accepted and the earlier obligation of September 8th surrendered. We find here defendant in the actual possession of the renewal previously given, and an apparent acceptance of a new paper in lieu thereof. Ordinarily, this would raise a question of fact as to whether or not it was the intention of the bank to accept the new note in place of that executed by Lipschitz as an individual.

It further appeared that no prompt complaint was made by the bank of the surrender of the old obligation by the bookkeeper, though known the same day by Greenzweig. Later, on December 24th, the last named, president and chief executive of the bank, furnished to the defendant a list of the obligations on which Lipschitz was personally liable, and those of the Triangle Silk Mfg. Co., adding to the latter that of December 8, 1926, executed by it. It was then suggested that a new obligation should be signed by the corporation for $10,000, which had been fixed as the limit of credit which should be given to the company, and that payment of this should be guaranteed by Lipschitz. A copy of the new note, so endorsed, was forwarded for execution to the defendant, but he refused to sign the warranty. He did lift three accommodation notes on which his individual liability was apparent, but refused to assume responsibility for the note of December 8th, insisting that new paper had been accepted in lieu thereof.

It should be further observed that the renewal note, which had been surrendered, was in the possession of

Lipschitz, having been returned to him after that of December 8th had been accepted. Prima facie, the possession of the obligation shows that the same has been satisfied: Porter v. Gunnison, 2 Grant. 297; Zeigler v. Gray, 12 S. & R. 42; Trego v. Cunningham's Est., 267 Ill. 367, 108 N. E. 350. The receipt and acceptance of the renewal and surrender of the original paper is evidence of payment (Citizens Bank v. Platt, 135 Mich. 267, 97 N. W. 694), and raises a question for the jury as to whether or not it was accepted as a substitute: Briggs & Drum v. Holmes & Sons, supra; Nobles v. Eclectic Bank (Ala.), 115 So. 13; Boulter v. Joliet Nat. Bank, 295 Ill. 594, 129 N. E. 513; Fox v. Terre Haute Nat. Bank (Ind.), 129 N. E. 33; Stebbins v. North Adams Trust Co. (Mass.), 136 N. E. 880; Bloom v. Polacsek, 123 N. Y. Supp. 951.

The learned court below was of opinion that the rule suggested should not apply in the present case for the reason that the evidence failed to disclose any authority on the part of Greenzweig to accept a new obligation in substitution for the earlier one. It may be observed that no fraud on the part of defendant in effecting the change or securing the actual possession of his note is averred. The president and chief executive of the bank was Greenzweig, and it was through his solicitation, and a director of the bank, Lewis, that the signature to the original note was secured so as to make good the acceptance chargeable to the manufacturing company. The fact that defendant became the accommodation maker, with full knowledge of the bank, would be no defense to the note originally executed, yet the circumstances which caused it to be given may be considered in determining whether the final acceptance on December 8th of the Triangle note was intentional and impliedly agreed to be in substitution for the earlier notes.

The further fact that Greenzweig, two weeks after the alleged change of security, distinguished between the notes on which defendant was personally liable, and the

one of the company, and that he then urged that defendant guarantee payment of the latter, was a fact for the jury's consideration. It is contended that a president and chief executive had no power to discount or accept new paper without express consent of his board of directors, and that therefore any attempted substitution of the note of December 8th by him, or with his knoweldge and consent, being without express warrant, was ineffective. It is true that where such an officer acts beyond the scope of his general authority, the institution which he represents will not be bound by his acts: Mutual Trust Co. v. Stern, 235 Pa. 202; Lehigh Val. Nat. Bank v. Rapp, 286 Pa. 29. So, an agreement by a cashier that one signing an obligation should not be held liable therefor would be ineffective: First Nat. Bank of Hooversville v. Sagerson, supra; Bank of Greencastle v. Baer, 277 Pa. 184. But his business dealings with third parties, without notice of limitation on his authority, within the apparent scope of the general usage of such an institution, will bind the bank: Brown v. Mt. Holly Nat. Bank, 288 Pa. 478. Though the discounting of new paper would doubtless be a matter requiring special approval of the directors, yet this was the case merely of the substitution of a note known by the directors to be the actual obligation of the silk company.

The delivery in this case was by the bookkeeper of the bank, and such a person acts under special authority and can bind the bank only when proceeding within the line thereof. "But the acts of minor officials, within the scope of their authority, are binding on the bank......and if a minor officer acts in the place of the cashier or other administrative officer during the latter's absence, the bank is bound by his acts which pertain to the usual and ordinary business of the bank. Where the bank holds out even a minor official as being entrusted with certain powers and duties, his acts, within the scope of such apparent powers, are binding on the bank": 7 C. J. 559. Here the renewal note was surrendered by the

bookkeeper upon the presentation of a new obligation, while the president and chief executive was temporarily absent at lunch, but upon his return he was informed of what had been done, and made no immediate demand for a return of the obligation surrendered. Later, he telephoned and communicated by letter of December 24th, already referred to, not then suggesting that the Triangle note had not been substituted with authority for the earlier one of Lipschitz, but endeavoring to have him reassume liability by guaranteeing a new obligation of the silk company for $10,000, which was the limit of credit fixed for that corporation in the particular bank by its directors. No specific approval of the transaction by the board as such appears, but, on the other hand, we find no express repudiation, though the whole question was later referred, as appears by the minutes, to the attorney of the institution on January 4th following. At that time the action of the executive committee of the bank as to prior transactions was generally approved by the directors. By the by-laws, the president, who was a member of it, was required to report all loans or renewals, and the executive committee, of which he was a member, had imposed upon it the duty of acting on all loans. Greenzweig testified that "when the note was taken it was brought to the attention of the board."

In entering judgment for the plaintiff the court below was of opinion that there was no intention to substitute the note of the silk company for the individual obligation of the defendant, and that Greenzweig was without authority to approve such action had it been taken. It may well be that no such purpose existed, and, if it did not, then the new note is to be treated merely as collateral security for the earlier one on which suit was brought, but the note was surrendered into the possession of defendant, and the evidence indicates that there was knowledge by the directors of the substitution. Whether there was any intention that Lipschitz, the maker, should be relieved, and the silk company made

solely liable in his place, is a matter of doubt, but the circumstances attending the transaction are such as to make these questions conflicting ones of fact, and a summary verdict for plaintiff should not have been ordered. Without indicating in any way our view as to the merits of the case, we are of opinion that the matter should have been submitted to a jury for solution, and the first assignment of error is sustained.

The judgment is reversed and a venire facias de novo awarded.